UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ALEXANDER D. CAMBRONERO,

        Plaintiff,

    v.                          Case No. 20-cv-1635-bhl

CHRYSTAL MELI, et al.,

        Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

      Plaintiff Alexander Cambronero, who is incarcerated at the Stanley Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on deliberate indifference claims against Defendants Chrystal Meli and Cheryl Jeanpierre in connection with Dr. Jeanpierre's decision to discontinue Cambronero's Gabapentin prescription. On December 6, 2021, Defendants filed a motion for summary judgment, which is fully briefed and ready for the Court's decision. The Court will grant Defendants' motion and dismiss this case.

## BACKGROUND

      At the relevant time, Cambronero was incarcerated at the Waupun Correctional Institution, where Meli worked as the health services manager and Dr. Jeanpierre worked as a physician. On September 24, 2018, Dr. Jeanpierre prescribed Cambronero 300mg of Gabapentin, twice per day for 180 days in response to his complaints of chronic wrist pain. On January 4, 2019, she increased the dosage to 600mg, four times per day for 180 days in response to his complaints that 300mg was insufficient to address his pain. As part of the renewal of his prescription, Cambronero was asked to sign a chronic pain management agreement. He signed the agreement on February 18,

2019. Per the agreement, Cambronero was required, among other things, to attend regular follow-up visits, to take all medication as prescribed, to not share, trade, hoard, divert, or misuse the medication, and to not use any contraband "including marijuana, cocaine, heroin, tobacco, alcohol, etc." Dkt. No. 25 at ¶¶1-3; 16-21; Dkt. No. 38 at ¶¶1-2, 4.

On March 28, 2019, Cambronero received a conduct report for possessing intoxicants. A corrections officer had discovered Cambronero holding a cup of an alcoholic mixture as well as two plastic containers with the alcoholic mixture that were hidden nearby. On April 5, 2019, Cambronero was found guilty of the conduct report, and that same day, Dr. Jeanpierre discontinued his Gabapentin prescription because she determined that he had violated his chronic pain management agreement. It did not matter to Dr. Jeanpierre that Cambronero had been caught *possessing* rather than *using* intoxicants because she concluded that his very possession implied that he was at a significant risk for using them. Dr. Jeanpierre explains that using alcohol while taking Gabapentin can cause increased drowsiness, dizziness, or other forms of impairment that are unsafe for the patient and others. Dr. Jeanpierre was also aware that Cambronero had access to alternative pain management. At the time she discontinued the Gabapentin prescription, Cambronero had other prescriptions for acetaminophen three times per day, lidocaine 4% cream twice per day, and naproxen twice per day. Dkt. No. 25 at ¶¶23-29; Dkt. No. 38 at ¶¶4-6.

On May 4, 2019, Dr. Jeanpierre began to work full time at another institution, so she did not treat Cambronero again until September 20, 2020, when she began filling in at Waupun during a physician shortage. At that time, she requested approval to prescribe Cambronero Gabapentin in response to his complaints of chronic back pain and carpal tunnel syndrome, but she informed him that, because he had previously been in possession of intoxicants, it was unlikely that the request would be approved. On September 28, 2020, Dr. Jeanpierre's request was not approved.

Dr. Jeanpierre had no further contact with Cambronero. Dkt. No. 25 at ¶¶30-33; Dkt. No. 38 at ¶6.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Cambronero asserts that both Dr. Jeanpierre and Meli violated the Eighth Amendment. He contends Dr. Jeanpierre violated his rights when she discontinued his Gabapentin prescription. As for Meli, however, he agrees that, as the health services manager, she played no role in the enforcement of the chronic pain management agreement and that she lacked authority to override Dr. Jeanpierre's decision to discontinue his Gabapentin prescription. *See* Dkt. No. 36 at 3; Dkt.

3

No. 38 at ¶3.  Accordingly, because Cambronero concedes that Meli was not personally involved in any alleged constitutional violation, she is entitled to summary judgment.  *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("As a nonmedical administrator, [defendant] was entitled to defer to the judgment of jail health professionals so long as he did not ignore [the inmate].").

Turning to Cambronero's claim against Dr. Jeanpierre, "the Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care."  *Gabb v. Wexford Health Sources, Inc*., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted).  The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition."  *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)).  Dr. Jeanpierre does not dispute that Cambronero's chronic pain qualifies as an objectively serious medical condition.  Accordingly, the Court will focus its analysis on whether she was deliberately indifferent to his pain when she discontinued his Gabapentin prescription.

An official is deliberately indifferent if that official was aware that the prisoner faced a substantial risk of serious harm but disregarded the risk by consciously failing to take reasonable measures to address it.  *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997); *Farmer v. Brennan* 511 U.S. 825, 847 (1994).  "Something more than negligence or even malpractice is required."  *Pyles*, 771 F.3d at 409.  Courts defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the

4

circumstances. *Pyles*, 771 F.3d at 409. A "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id*. "[T]he Eighth Amendment does not entitle prisoners to choose their course of treatment." *Harris v. Molinero*, 803 F. App'x 1, 5 (7th Cir. 2020).

Cambronero emphasizes that he did not violate the chronic pain management agreement because he merely *possessed* rather than *used* intoxicants. As such, Cambronero argues that Dr. Jeanpierre lacked a sufficient basis to discontinue his prescription. No jury could reasonably agree with Cambronero's conclusion. As an initial matter, a prison doctor is justified in reasonably inferring that an inmate is improperly using intoxicants from his possession of them. Dr. Jeanpierre was not required to catch him putting the intoxicants in his mouth. Moreover, as Dr. Jeanpierre explains, whether Cambronero actually consumed the intoxicants is beside the point. The mere fact that he possessed alcohol significantly increased the risk that he would use alcohol. Because mixing alcohol and Gabapentin can result in significant side effects, Dr. Jeanpierre asserts that she decided that it was in his and others' best interest to discontinue the medication. Cambronero may disagree with her decision that he was at a high risk of using alcohol, but he presents no evidence to support a conclusion that "no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 65, 655 (7th Cir. 2008); *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016) ("By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment.").

Cambronero's claim fails for yet another reason. Looking at the totality of Cambronero's care, it is clear that the treatment he received passes constitutional muster. *See Petties v. Carter*,

836 F.3d 722, 728 (7th Cir. 2016) (courts must "look at the totality of an inmate's medical care when considering whether that care evinces deliberate indifference to serious medical needs"). The record reflects that Dr. Jeanpierre was responsive to Cambronero's complaints of pain. She agreed to increase the prescribed dosage after he complained his pain was not being fully addressed. And, when she canceled the prescription, she first noted that he was receiving three other pain medications multiple times per day. Cambronero was then prescribed additional pain medications, topical creams, and physical therapy by other providers after Dr. Jeanpierre started working at another institution. *See* Dkt. No. 25 at ¶¶34-42. On this record, no jury could reasonably conclude that the care he received evinces deliberate indifference to his chronic pain. Accordingly, for all these reasons, Dr. Jeanpierre is entitled to summary judgment.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (Dkt. No. 23) is **GRANTED** and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on May 12, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

6

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.